UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER KEOWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| SAINT LOUIS COUNTY, MISSOURI, ) | |
| Serve: ) | |
| Sam Page, County Executive ) | |
| 41 South Central, 9th Fl. ) | |
| Clayton, MO 63105 ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff Christopher Keown, by and through his attorneys, and for his Complaint against Defendant Saint Louis County, Missouri, states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to Title 28, United States Code, Section 1367.

3. This Court also has jurisdiction over Plaintiff' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue over Plaintiff' claims is proper in the Eastern District of Missouri because Defendant resides in the Eastern District of Missouri within the meaning of 28 U.S.C. § 1391 and because the events, acts, and omissions giving rise to Plaintiff's claims occurred in the Eastern District of Missouri.

1

## PARTIES

5.Plaintiff Christopher Keown is an individual and a resident of St. Louis County, Missouri.

6.Defendant Saint Louis County, Missouri, (hereinafter "SLC") is a county located within the state of Missouri and is a local government entity within the meaning of Title II of the ADA.

## FACTS COMMON TO ALL COUNTS

7.Saint Louis County operates a through its Department of Justice Services the Saint Louis County Jail located at 100 South Central Avenue, Clayton, Missouri, commonly known as the Buzz Westfall Justice Center.

8.Plaintiff was arrested on August 26, 2017 and has been in the custody of Saint Louis County since that date.

9.Plaintiff has been in the custody of Saint Louis County at the Buzz Westfall Justice Center since August 26, 2017.

10.Plaintiff suffered from an earlier leg injury and had an affixiator attached to his left leg at the time he entered the custody of Saint Louis County.

11.Plaintiff's leg was damaged during his arrest.

12.It was apparent that Plaintiff's leg needed medical attention.

13.Defendant knew that Plaintiff's leg needed medical attention.

14.Defendant was deliberately indifferent to Plaintiff's need for medical attention.

15.The county failed to provide adequate medical treatment to Plaintiff's leg subsequent to his arrest, in deliberate indifference to Plaintiff's serious medical condition, which resulted in the necessity to amputate his left leg below the knee several days later.

16. The amputation of Plaintiff's left leg caused him to have physical impairments that substantially affected one or more major life activities including caring for himself, performing manual tasks, walking, standing, lifting, bending, and working.

17. The County refused to provide Plaintiff adequate medical treatment including physical therapy after his leg was amputated, in deliberate indifference to Plaintiff's serious medical condition.

18. The County initially provided Plaintiff a walker, however, they took it away shortly after his incarceration.

19. The County has since refused to provide Plaintiff a walker, even though one was available and it was indicated by Plaintiff's medical providers as necessary equipment for Plaintiff's disabilities.

20. The County forced Plaintiff to use a shower facility that was not adequately equipped for handicap use.

21. The Buzz Westfall Justice Center had showers that were handicap accessible with built in stools and railings, however, the County forced Plaintiff to use a shower that was not equipped with stools or railings or other handicap assist device.

22. The County forced Plaintiff to use a plastic chair in the shower which was not sturdy or intended to be used as a handicap assist device.

23. The showers at the Justice Center have a button that needs to be pushed for the water to run, and then it only runs for a short period, which requires the button to be pushed again. The button is too high to press from a seated position.

24. The County forced Plaintiff to stand from the unstable plastic chair in slippery shower conditions to push the button without the aid of built in railings or other proper handicap assist devices.

25. Plaintiff fell while attempting to stand to press the shower button and severely injured his hip.

26. The hip injury was caused by the County's failure to provide Plaintiff proper accommodations for his disabilities.

27. Plaintiff notified the County of Plaintiff's injury, however they refused to provide adequate medical treatment for three months in deliberate indifference to Plaintiff's serious medical condition.

28. Plaintiff's hip injury was so severe that Plaintiff required a total hip replacement.

29. Plaintiff underwent hip replacement surgery August 6, 2018 where his hip was replaced with an artificial hip.

30. Plaintiff's artificial hip is expected to last approximately 15 years.

31. Plaintiff will need to undergo several additional surgeries to have his artificial hip replaced during his lifetime.

32. On August 9, 2018, a registered nurse from the Justice Center confirmed with Plaintiff's medical staff at Saint Mary's Hospital that the County would provide a Plaintiff a two-wheeled walker as recommended by Plaintiff's medical provider, however, the County did not provide such walker.

33. The county has refused to provide Plaintiff with a prosthetic limb.

34. The County has continued to require Plaintiff to use the non-handicap equipped shower after Plaintiff had the hip replacement even though handicap equipped showers were available.

35. Plaintiff was disabled at the time of Plaintiff's arrest and since, in that he had physical conditions that substantially limit his major life activities including caring for himself, performing manual tasks, walking, standing, lifting, bending, and working.

36. The County has failed to reasonably accommodate Plaintiff's disabilities including failing to provide adequate and timely medical services and by failing to provide adequate medical equipment and devices for Plaintiff's disabilities.

37. The County refused to provide reasonable accommodations and modifications that the County employees knew or reasonably had reason to know were needed by Plaintiff.

38. The County refused to provide reasonable accommodations and modifications that were specifically requested by Plaintiff and Plaintiff's medical providers.

39. Defendant's actions were frequent and continuing in nature since the date of Plaintiff's incarceration.

40. The County's failures to accommodate have caused Plaintiff physical injuries, pain and suffering and mental anguish.

41. The County has failed to treat Plaintiff equally in the criminal justice system and has failed to afford Plaintiff an opportunity to benefit from safe, inclusive communities.

**COUNT I – SECTION 504 OF THE REHABILITATION ACT 29 U.S.C. § 794 *ET SEQ.***

42. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

43. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

44. Plaintiff is at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because he has a physical impairment that ssubstantially limits one or more of his major life activities.

45. Plaintiff is otherwise qualified to participate in the services, programs, or activities that are provided to prisoners at the Saint Louis County Jail facility.

46. At all times relevant to this action, Defendant is a recipient of Federal funding within the meaning of the Rehabilitation Act.

47. In providing any aid, benefit, or service, a recipient of federal financial assistance "may not . . . [d]eny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or service," "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," or "[o]therwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others[.]" 45 C.F.R. § 84.4(b)(1)(i), (ii), (iii), and (vii).

48. Defendant uses criteria and methods of administration that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Jail's program with respect to persons with mobility disabilities, including plaintiff, and that subject persons with mobility disabilities to discrimination in violation of 45 C.F.R. § 84.4(b)(4)(i), (ii).

49. Defendant's policies, procedures, and practices exclude persons with mobility disabilities, including plaintiff, from the Jail's program and discriminate against them solely on account of their disabilities, in violation of Section 504 and the regulations promulgated pursuant thereto. Further, Defendant systematically fail and refuse to offer reasonable modifications and accommodations for individuals with mobility disabilities.

50. Defendant's policies, procedures, and practices have resulted in, or threaten to result in, discrimination against individuals with mobility disabilities, including Plaintiff in their unlawful exclusion from participation in, and denial of benefits of, the Defendant's programs, services, and activities.

51. Defendant was on notice of the need for accommodations for Plaintiff and was deliberately indifferent to that need as evidenced by its failure to ensure that its facilities are physically accessible and its failure to adopt policies and procedures to ensure accommodations are provided in a timely manner to people with disabilities including Plaintiff.

52. Defendant committed the acts and omissions alleged herein with intent, deliberate indifference, and reckless disregard of the rights of Plaintiff.

53. Defendant violated the Act by providing substandard accommodations or refusing to provide Plaintiff with reasonable accommodations for his disabilities.

54. As a direct and proximate result of the aforementioned acts, Plaintiff suffered and continues to suffer, hardship, injuries, and physical and mental conditions, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life due to Defendant's failures to address accommodations, modifications, services, and access required for his disabilities.

55. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief is an appropriate remedy. Moreover, as a result of Defendant's actions Plaintiff is suffering irreparable harm, and thus immediate relief is appropriate.

56. Plaintiff is entitled to recover his costs and attorney's fees incurred pursuing his action against the Defendant.

57. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiff prays for judgment as set forth below.

### COUNT II – TITLE II OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. §12101 *ET SEQ.*

58. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

59. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem" and that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(2)&(5).

60. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable

standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

61. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

62. At all times relevant to this action, Defendant is a "public entity" within the meaning of the ADA under 42 U.S.C. § 12131(1).

63. The ADA defines a qualified individual with a disability as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1)(A), (2)(A), and 28 C.F.R. § 36.105.

64. Plaintiff is a qualified individual with a disability within the meaning of the ADA and is substantially limited in the major life activities of caring for himself, performing manual tasks, walking, standing, lifting, bending, and working.

65. Congress directed the DOJ to write regulations implementing Title II's prohibition against discrimination on the basis of disability in state and local government services. 42 U.S.C. § 12134. Pursuant to this mandate, the DOJ has issued regulations defining the forms of discrimination prohibited by Title II of the ADA. 28 C.F.R. §§ 35.101 *et. seq.*

66. Defendant has excluded Plaintiff from participation in the services, programs and activities of the Saint Louis County Jail facilities, and have denied him the rights and benefits accorded to other prisoners, solely by reason of his disabilities in violation of the ADA.

67. In addition, the Defendant has violated the ADA by failing or refusing to provide Plaintiff with reasonable accommodations, aids, benefits and services related to his disabilities. *See generally* 28 C.F.R. § 35.130.

68. Defendant is mandated to operate each program, service, or activity so that, "when viewed in its entirety, [it] is readily accessible to and useable by individuals with disabilities." 28 C.F.R. §§ 35.150(a); *see also* 28 C.F.R. §§35.149 & 35.151.

69. Defendant continued to violate the ADA by maintaining inaccessible facilities that deny people with disabilities access to programs, services, and activities, including Plaintiff.

70. Defendant has failed to make reasonable modifications to its policies, practices, and procedures which affect prisoners with disabilities at the Jail including Plaintiff. Any such policies that were in place to accommodate individuals with disabilities, including Plaintiff, were not followed or were insufficient to accomplish the requirements under the ADA.

71. Defendant's failure to make such reasonable modifications has resulted in discrimination against individuals, including Plaintiff, on the basis of disability in violation of 28 C.F.R. § 35.130(b)(7).

72. Defendant uses criteria and methods of administration that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of Defendant with respect to persons with disabilities in violation of 28 C.F.R. § 35.130(b)(3)(ii).

73. In providing the aid, benefits, and services associated with the Justice Center, Defendant denies individuals with disabilities the equal opportunity to participate in or benefit from the aid, benefits, or services of the Justice Center's programs. 28 C.F.R. § 35.130(b)(l)(i).

74. Defendant provides individuals with disabilities an aid, benefit, or service that is not as effective in affording the same opportunity to gain the same benefit as provided to persons without disabilities. 28 C.F.R. § 35.130(b)(1)(iii).

75. Defendant imposes or applies eligibility criteria that screen out or tend to screen out individuals with disabilities from fully and equally enjoying any service, program, or activity. 28 C.F.R. § 35.130(b)(8).

76. Plaintiff is informed, believe and thereon allege that Defendant and their agents and employees have failed and continue to fail to:

   a. Provide necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities, including Plaintiff, to participate on an equal basis in programs, services, and activities.

   b. Develop and enforce procedures for the Justice Center to ensure provision of necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities, including Plaintiff, to participate on an equal basis in programs, services, and activities.

   c. Train and supervise the Justice Center personnel to provide necessary accommodations, modifications, services, and/or physical access necessary to enable prisoners with disabilities, including Plaintiff, to participate on an equal basis in programs, services, and activities.

77. Defendant committed the acts and omissions alleged herein with intent, deliberate indifference, and reckless disregard of the rights of Plaintiff.

78. 183. Pursuant to 42 U.S.C. § 12133, the remedies set forth in 29 U.S.C. § 794a are the remedies available for a violation of Title II of the ADA, including monetary damages.

79. Defendant was on notice of the need for accommodations for Plaintiff and was deliberately indifferent to that need as evidenced by its failure to ensure that its facilities are physically accessible and by its failure to adopt policies and procedures to ensure accommodations are provided in a timely manner to people with disabilities, including Plaintiff.

80. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continue to suffer, hardship, injuries, and deteriorating physical and mental conditions, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life due to Defendant's failures to address accommodations, modifications, services, and access required for Plaintiff's disabilities.

81. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendant's actions, Plaintiff is suffering irreparable harm and, thus, immediate relief is appropriate.

82. Plaintiff is entitled to recover his costs and attorney's fees incurred pursuing his action against the Defendant.

83. Pursuant to the remedies, procedure, and rights set forth in 42 U.S.C. §§ 12133, 12188 and 12205 Plaintiff prays for judgment as set forth below.

**COUNT III – MISSOURI HUMAN RIGHTS ACT (MHRA) § 211.010 R.S.MO. *ET SEQ.***

84. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

85. Plaintiff is disabled as defined under the Missouri Human Rights Act (MHRA) Missouri Human Rights Act, § 213.010 RSMo., et seq.

86. The Plaintiff's disabilities inhibit major life activities including caring for himself, performing manual tasks, walking, standing, lifting, bending, and working.

87. Missouri Law prohibits discrimination in public accommodations specifying "[a]ll persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment within this state of any place of public accommodation, as hereinafter defined, without discrimination or segregation because of . . . disability." § 213.065(1) R.S.Mo.

88. "It is an unlawful discriminatory practice for any person, directly or indirectly, to refuse, withhold from or deny any other person, or to attempt to refuse, withhold from or deny any other person, any of the accommodations, advantages, facilities, services, or privileges made available in any place of public accommodation," "or to segregate or discriminate against any such person in the use thereof because of . . . disability." § 213.065(2) R.S.Mo.

48. "Places of public accommodation" include "[a]ny public facility owned, operated, or managed by or on behalf of this state or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds." § 213.010 R.S.Mo.

89. The Plaintiff is a member of the class of people intended to be protected by the MHRA, including, sections 213.065 RSMo.

90. Defendant refused, withheld from and denied the plaintiff, and attempted to refuse withhold from and deny the Plaintiff the accommodations, advantages, facilities, services, and privileges made available in the Saint Louis County Justice Center.

91. Defendant segregated and discriminated against Plaintiff because of his disability.

92. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continue to suffer, hardship, injuries, and deteriorating physical and mental conditions, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life due to Defendant's failures to address accommodations, modifications, services, and access required for Plaintiff's disabilities.

93. Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Moreover, as a result of Defendant's actions, Plaintiff is suffering irreparable harm and, thus, immediate relief is appropriate.

94. The Defendant's conduct was outrageous because of the Defendant's evil motive or reckless indifference to the Plaintiff's rights.

95. Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of Plaintiff, and entitle Plaintiff to an award of punitive damages.

96. Plaintiff is entitled to recover his costs and attorney's fees incurred pursuing his action against the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Keown prays this court enter judgment against Defendant Saint Louis County, Missouri for damages and equitable relief including:

1. A judicial declaration that Defendant Saint Louis County's conduct as alleged herein has violated, and continues to violate, Section 504 of the Rehabilitation Act;

2. A judicial declaration that Defendant Saint Louis County's conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act;

3. Enjoining Defendant from violating Section 504 of the Rehabilitation Act;

4. Enjoining Defendant Saint Louis County from violating Title II of the Americans with Disabilities Act;

5. Retention of jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future, absent continuing jurisdiction;

6. Award Plaintiff damages in an amount to be determined at trial in excess of $75,000.00, for actual damages, for nominal damages in the event no actual damages are found, for punitive damages,

7. Award Plaintiff attorney's fees and costs, as provided by statute; and

8. Interest on all amounts;

9. Such other relief as the Court finds just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff, through counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

**KASPER LAW FIRM, LLC**

By: */s/ Kevin J. Kasper*
Kevin J. Kasper, #52171MO
Ryan P. Schellert, #56710MO

15

                                      3930 Old Hwy 94 South - Suite 108
                                      St. Charles, MO 63304
                                      Ph: 636-922-7100
                                      Fax: 866-303-2874
                                      Email: KevinKasper@KasperLawFirm.net
                                      Email: RyanSchellert@KasperLawFirm.net

                                      *ATTORNEYS FOR PLAINTIFF*